FILED
2012 Jun-15  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RUSSELL and SUE POE,** individuals, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No.:** |
| **ZWICKER & ASSOCIATES, P.C.,** | ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW** the Plaintiffs, by and through counsel, and for their Complaint against the Defendant:

1.  This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), out of state law violations and out of the invasions of Plaintiffs' personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

2.  Congress found it necessary to pass the FDCPA due to rampant abusive Practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of

personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)     Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)     **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d)     Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)     It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## <u>JURISDICTION</u>

3.     Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiffs in Alabama.

4.     Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed is over $75,000 and the parties are completely diverse.

## VENUE

5.   Venue is proper as Plaintiffs live in this judicial district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## PARTIES

6.   Plaintiff Russell Poe (hereinafter "Plaintiff") is a natural person who is a resident and citizen of Alabama in this judicial district.

7.   Plaintiff Sue Poe (hereinafter "Plaintiff") is a natural person who is a resident and citizen of Alabama in this judicial district.

8.   Defendant Zwicker & Associates, P.C., ("Defendant" or "Zwicker[1]") is a foreign debt collection firm that engages in the business of debt collection in Alabama (including this judicial district).

9.   Zwicker is incorporated in Massachusetts and has its principal place of business in Massachusetts.

10.   Zwicker is a collection law firm.

11.   Zwicker is a debt collector under the FDCPA.

---

[1] "Zwicker" or "Defendant" means the named Defendant directly or through its debt collectors, employees and agents.

## FACTUAL ALLEGATIONS

12. Plaintiffs allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13. The alleged debt is a personal American Express card.

14. Zwicker has alleged that both Plaintiffs are responsible for this debt.

15. The debt is owed, if it is owed at all, to American Express by Plaintiff Russell Poe only.

16. Plaintiffs started receiving calls and letters from Zwicker about this debt.

### Zwicker Agrees To Payment Plan With Plaintiffs

17. In the Fall of 2010, Plaintiffs agreed to a payment plan with Zwicker.

18. Payments of several hundreds of dollars were made through the end of 2010.

19. Beginning in February 2011, monthly payments of $147 were made to Zwicker.

20. Following the tornados, the May payment was a smaller amount as Zwicker agreed to this.

21. Regular payments followed until December 2011.

### Zwicker Lies To Plaintiffs About A Delay In December 2011 Payment

22. In December 2011, Plaintiffs contacted Zwicker to see if the payment could be made towards the end of the month rather than the middle of the month.

23.  A person whose name is believed to be Candace Lebron at Zwicker approved the slight delay in the December 2011 payment.

24.  Zwicker told Plaintiffs this delay was acceptable.

25.  Zwicker never told Plaintiffs that this delay would be considered a breach of the payment plan.

26.  Zwicker never told Plaintiffs that by delaying the payment by approximately ten days, around Christmas time, would result in Plaintiff Russell Poe being sued by American Express in a bogus lawsuit.

27.  Zwicker never told Plaintiffs anything negative would result from the approved change in payment date.

28.  Zwicker, however, knew that when it told Plaintiffs they were approved to change the payment date that Plaintiff Russell Poe would be sued by American Express.

29.  Zwicker knowingly lied to Plaintiffs about the payment date change being approved.

30.  Zwicker knowingly suppressed the truth from Plaintiffs about the devastating consequences that would occur when Plaintiffs did what Zwicker approved for Plaintiffs to do.

31.  The December 2011 misrepresentations and suppressions were designed to provide an excuse for Zwicker to authorize the Couch Conville Blitt law

firm (located in Louisiana, Mississippi, Alabama, and Tennessee) to sue Plaintiff Russell Poe in an effort to obtain a judgment against Plaintiff Russell Poe and then to garnish wages, bank accounts and to put a lien or take other collection actions against Plaintiffs.

32.   Plaintiffs believed Zwicker when Zwicker told Plaintiffs that the December 2011 payment could be delayed until around Christmas.

33.   Plaintiffs had no reason to believe that Zwicker was lying to Plaintiffs.

34.   Plaintiffs had no reason to believe Zwicker was suppressing the truth from Plaintiffs.

35.   The only entity in the world that knew the truth was Zwicker.

36.   Plaintiffs reasonably and justifiably relied on what Zwicker told Plaintiffs.

**<u>January, February, March, And April Payments Are Made</u>**
**<u>Per The Payment Agreement</u>**

37.   Defendant Zwicker continued to draft money out of Plaintiffs' bank account per the payment agreement.

38.   On or about January 17, 2012, Zwicker drafted the $147 payment.

39.   On or about February 17, 2012, Zwicker drafted the $147 payment.

40.   On or about March 19, 2012, Zwicker drafted the $147 payment.

41.   On or about April 17, 2012, Zwicker drafted the $147 payment.

42.  During this time Zwicker did not inform Plaintiffs that either one of the Plaintiffs was about to be sued even though every payment had been made with the approval of Zwicker.

### American Express Centurion Bank Sues Russell Poe In Circuit Court Of Blount County For $12,157.95

43.  On May 7, 2012, the Couch Conville Blitt law firm filed suit against Plaintiff Russell Poe in Circuit Court (Blount County) for $12,157.95.

44.  The Plaintiff in the Circuit Court lawsuit is "American Express Centurion Bank."

45.  Plaintiffs Russell and Sue Poe have not done business with American Express Centurion Bank and do not know who this entity is that is suing Plaintiff Russell Poe.

46.  The case number is CV-12-090.

47.  There is no reference in this lawsuit to the payment plan that Plaintiffs and Zwicker entered into.

48.  Plaintiffs received the lawsuit in the evening of May 11, 2012.

49.  Plaintiffs were shocked and devastated by this lawsuit.

### Plaintiffs Try To Figure Out Why The Lawsuit Was Filed

50.  Plaintiffs called Zwicker on May 11, 2012, after receiving the lawsuit, and spoke with a "Barbie" at extension 5137.

51.   Zwicker told Plaintiffs that because of the December 2011[2] payment that was delayed, the payment agreement was broken and the account was sent to collection counsel.

52.   Plaintiffs responded that the payments were by bank draft and no payment was made without the approval of Zwicker.

53.   Zwicker said Plaintiffs would have to speak to collection counsel as there was nothing Zwicker would do for Plaintiffs.

54.   On Monday, May 14, 2012, Plaintiffs called one of the collection lawyers.

55.   The collection lawyer said Plaintiffs would have to speak to the Account Representative Jessica at 866-282-3853.

56.   Jessica, at the law firm of Couch Conville Blitt, told Plaintiffs that Plaintiffs needed to pay the debt in full immediately.

57.   Jessica mentioned that a payment plan could be set up for $535 a month.

58.   When Plaintiffs told Jessica, at the collection law firm, that there was already a payment plan with Zwicker, Jessica informed Plaintiffs that the Couch Conville Blitt law firm was now handling the account.

59.   Plaintiffs then called Zwicker on May 14, 2012, and again were unable to reach Candace but instead spoke with "Barbie" at extension 5137.

---

[2] Zwicker may have said the "October 2011" payment but that was made on the 17th. The only payment that was delayed was the December payment.

60. Plaintiffs explained to Barbie what happened.

61. Barbie said she would speak to a manager.

62. Barbie then said someone would call Plaintiffs back after speaking with the attorneys on the morning of May 15, 2012.

63. No one ever called Plaintiffs back.

64. On May 15, 2012, Plaintiffs called Zwicker and spoke with Candace Lebron.

65. Candace Lebron transferred Plaintiffs to a manager named "Jack" at extension 3216.

66. Plaintiffs left a detailed voicemail message on Jack's voicemail.

67. No one called Plaintiffs back.

68. On May 17, 2012, Plaintiffs left a total of four voicemail messages for various employees of Zwicker.

69. Two messages for Candace Lebron.

70. One message for Barbie at extension 5137.

71. One message for Chris at extension 3216.

72. No response from Zwicker on any of these messages.

73. On May 22, 2012, Plaintiffs spoke with a "Shane Duplaisir" at the Couch Conville Blitt law firm.

74. Shane said he would investigate this matter and it would take seven days.

## Plaintiffs Hire Attorney And File Answer To The American Express Lawsuit On May 31, 2012

75.    Having no response from the Couch Conville Blitt law firm and no response from Zwicker, Plaintiff Russell Poe filed an answer (through counsel) on May 31, 2012.

## American Express, Realizing It Had Been Caught, Seeks To Dismiss The Bogus Lawsuit Against Plaintiff Russell Poe

76.    The Answer in Blount County made it clear that the lawsuit was without merit.

77.    American Express, and Defendant Zwicker which is directing the litigation[3], knew that the game was up as it would not be able to default Plaintiff Russell Poe or intimidate him into paying more than the agreed amount.

78.    Knowing that Plaintiff Russell Poe was represented by counsel, the Couch Conville Blitt law firm nevertheless sent a pleading entitled "Motion to Dismiss" directly to the represented Plaintiff Russell Poe.

79.    The Couch Conville Blitt law firm also sent a letter, which states that it is a "communication from a debt collector," directly to the represented Plaintiff Russell Poe.

---

[3] If Zwicker is not controlling the litigation and if Couch Conville Blitt law firm is not an agent for Zwicker, then Plaintiffs will consider adding Couch Conville Blitt law firm as a party Defendant for its own violations of state law and the FDCPA.

## **Reasons For Zwicker's Illegal Conduct**

80. The purpose of the Defendant Zwicker's lying was to harass, annoy, abuse, or oppress Plaintiffs, so that the Plaintiffs would pay more every month on this debt than Zwicker had agreed for Plaintiffs to pay

81. This is a favorite tactic of abusive debt collectors.

82. The reason is that this tactic is so effective.

83. The Defendant Zwicker misrepresented multiple aspects about this debt including the character, amount, and legal status of the debt.

84. The collection actions from Zwicker have been of a frequency and type that the natural consequence is to annoy, harass, oppress and abuse Plaintiffs.

85. The calls from Zwicker have been made with the frequency and content designed to annoy, harass, oppress and abuse Plaintiffs.

86. Defendant Zwicker has been successful as its actions have annoyed, harassed, abused, and/or oppressed Plaintiffs.

87. Much to the regret of Defendant, Plaintiffs refused to allow a default judgment and refused to more than triple the payments every month even when lied to by Defendant Zwicker and sued by Zwicker's agent.

88. Defendant Zwicker has refused to give all required disclosures under the FDCPA when communicating with Plaintiffs.

89. Defendant Zwicker is a debt collector under 15 U.S.C. § 1692a(6).

90.    Defendant Zwicker would have continued to escalate the collection efforts against Plaintiffs but for this lawsuit which will stop all collection actions by Defendant and the Answer filed by Plaintiffs in the Blount County suit, by counsel, has convinced Zwicker and American Express to drop the frivolous suit that was filed against Plaintiff Russell Poe.

91.    Even though Defendant Zwicker knows its actions are illegal, it is perfectly willing to continue to act illegally for several reasons.

92.    First, Defendant Zwicker believes that most Alabama consumers will not know that it is illegal for Defendant to lie when collecting debts.

93.    Second, Defendant Zwicker believes that the very few Alabama consumers, who realize this is illegal for Defendant to act in this way, will be able to find representation or will otherwise take action.

94.    Defendant Zwicker believes that these very few Alabama consumers who do take action will either drop the matter or will file a pro se case where counsel for Defendant will be able to defeat the claims of the pro se consumer plaintiff.

95.    Third, even if the Alabama consumer is able to find representation, Defendant Zwicker is confident that it will not have to pay any damages above the maximum statutory damages of $1,000.

96.   Defendant Zwicker believes that judges will not allow mental anguish to go to the jury.

97.   Defendant Zwicker believes no punitive damages will be assessed against it under state law.

98.   Defendant Zwicker believes that any suit against it under the FDCPA can be defeated by an offer of judgment of $1,501 or some other small number above $1,000.

99.   Defendant Zwicker believes that since it will very rarely be sued in Alabama, particularly given the large number of violations it commits in Alabama, and given that it believes (incorrectly) that it is not subject to mental anguish claims and punitive damages claims, Defendant i s q uite willing to continue to break the law in Alabama.

100.  Defendant Zwicker has determined that the costs of limited litigation (by settling cases cheaply or small offers of judgment) are vastly outweighed by the profit in harassing and abusing Alabama consumers into paying money that would not have been paid if Defendant had not harassed and abused the Alabama consumers.

101.  Unfortunately, Defendant Zwicker is correct in its conclusion that it has been more profitable to violate the law than to obey it.

102.  This lawsuit is being brought to change that conclusion.

103. Defendant's actions not only harm Alabama consumers, but also put legitimate and law abiding debt collectors at a competitive disadvantage.

104. Congress recognized this problem over 30 years ago and that is part of the reason the FDCPA was passed.

## SUMMARY

105. All of the above-described collection communications made to Plaintiffs by Defendant Zwicker and collection agents of Defendant were made in violation of the FDCPA.

106. Defendant Zwicker violated numerous sections of the FDCPA, including, but not limited to:  1692c(a)(2), 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), 1692f, and 1692f(1).

107. The above-detailed conduct by Defendant Zwicker of harassing Plaintiffs in an effort to collect this debt was also an invasion of Plaintiffs' privacy and resulted in actual damages to the Plaintiffs.

108. The above detailed conduct by Defendant Zwicker reflects its knowledge and appreciation for the harm that would naturally and likely happen to Plaintiffs and with full knowledge thereof that Defendant willfully, maliciously, recklessly, and/or negligently undertook its actions and it was successful in causing the harm to the Plaintiffs that Defendant wanted to cause.

109.  The collection activities by Defendant Zwicker and its agents caused Plaintiffs stress and anguish.

110.  Defendant's repeated attempts to collect this debt from Plaintiffs and refusal to stop violating the law was an invasion of Plaintiffs' privacy and Plaintiffs' right to be left alone.

111.  Plaintiffs have suffered actual damages as a result of these illegal collection actions by Defendant Zwicker in the form of monetary loss, anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of Defendant.

112.  The only way that abusive debt collectors like Defendant Zwicker will stop its abusive practices towards consumers is by a jury verdict fully compensating Plaintiffs for the harm done to Plaintiffs and by a punitive damage award.

113.  A punitive damage award will get the attention of Defendant Zwicker and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain an unfair competitive advantage over honorable, law abiding collectors.

114.  A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA - stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

## RESPONDEAT SUPERIOR LIABILITY

115.  The acts and omissions of Defendant's agents were committed within the line and scope of their agency relationship with their principal the Defendant Zwicker.

116.  The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Zwicker in collecting consumer debts.

117.  By committing these acts and omissions against Plaintiffs, these other debt collectors were motivated to benefit their principal the Defendant Zwicker.

118.  Defendant Zwicker is therefore liable to Plaintiffs through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA, and Alabama tort law, in its attempts to collect this debt from Plaintiffs.

119.    Defendant Zwicker negligently and/or wantonly and/or hired, retained, trained or supervised incompetent debt collectors and is thereby responsible to the Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

120.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

121.    The acts and omissions of Defendant Zwicker and its agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiffs including, but not limited to the following:   1692c(a)(2), 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), 1692f, and 1692f(1).

122.    As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to statutory damages; actual and compensatory damages; and reasonable attorney's fees, expenses and costs, from Defendant Zwicker.

## COUNT II.

## INVASION OF PRIVACY

123.    Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

124. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Zwicker violated Alabama state law as described in this Complaint.

125. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

126. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

127. Defendant Zwicker and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion

and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

128. Defendant Zwicker and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' right to privacy.

129. Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

130. The conduct of Defendant Zwicker and its agents, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

131. The conduct of Defendant Zwicker went beyond the bounds of reasonableness in the collection of the alleged debt for all of the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

132. As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendant Zwicker.

133. All acts of Defendant Zwicker and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

134. Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

135. Defendant Zwicker negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiffs, and are thereby responsible to the Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs.

136. Had Defendant Zwicker hired competent debt collectors, the violations described in this Complaint would not have occurred.

137. Had Defendant Zwicker properly trained and/or supervised the debt collectors, the violations described in this Complaint would not have occurred.

138. Defendant Zwicker carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

139. Defendant Zwicker knew that the actions it was taking against the Plaintiffs would likely, and certainly, cause the exact type of injuries and damages that Plaintiffs suffered at the hands of Defendant.

## COUNT IV

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

140. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

141. Defendant Zwicker owes a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

142. Defendant Zwicker has assumed a duty to act reasonably towards Plaintiffs and not to unreasonably cause Plaintiffs harm.

143. Defendant Zwicker owes a duty to consumers against whom it is collecting to act reasonably.

144. All of the actions described in this Complaint demonstrate that Defendant Zwicker did not act reasonably towards the Plaintiffs.

145. Defendant Zwicker, by its described conduct, breached its duty to act reasonably towards Plaintiffs.

146. Defendant Zwicker proximately caused injuries and damages to Plaintiffs which were of the precise nature that Defendant anticipated causing when it breached its duty to act reasonably.

147. Defendant Zwicker knew, or should have known, that its conduct was likely to lead to the Plaintiffs' injuries yet it acted despite this knowledge.

148. Defendant Zwicker acted with full knowledge and with the design and intent to cause harm to Plaintiffs.

149. Defendant Zwicker was successful in its design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of Defendant when dealing with consumers who do not pay debts that Defendant alleges are owed.

150. Defendant Zwicker acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiffs as set forth in this Complaint.

151. Defendant Zwicker violated all of the duties Defendant had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

152. It was foreseeable, and Defendant Zwicker did in fact foresee it, the actions of the Defendant would lead and did lead to the exact type of harm suffered by Plaintiffs.

153. Defendant Zwicker acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiffs as set forth in this Complaint.

154. Defendant Zwicker invaded the privacy of Plaintiffs as set forth in Alabama law.

155. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

156. As a result of this conduct, action, and inaction of Defendant Zwicker, Plaintiffs have suffered damage as set forth in this Complaint.

## COUNT V

## FRAUD

157. Plaintiffs reallege all paragraphs as if set out here in full.

158. Defendant Zwicker represented to Plaintiffs that they could pay the December payment around Christmas time.

159. Plaintiffs relied upon the truthfulness of Defendant Zwicker in this representation.

160. This was the intent of Defendant, to trick by misrepresentation and suppression, the Plaintiffs into this delay so Defendant Zwicker could have Plaintiffs sued.

161. At the time of this representation, Defendant had no intention of honoring this promise.

162. Defendant Zwicker never told Plaintiffs the truth about the December payment.

163. Defendant Zwicker suppressed the truth from Plaintiffs as Defendant knew that Plaintiffs would have paid on the 17th if the Plaintiffs had known the truth.

164. The misrepresentations and suppressions concerned material facts relating to the payment of this alleged debt.

165. The Plaintiffs properly relied upon the false statements and suppressions as no one else in the world would know the mind and intent of Defendant Zwicker except for Defendant itself.

166. The shock, dismay, fear, anger, embarrassment, humiliation, sense of betrayal, and outrage felt and experienced in the Plaintiffs' body, mind, and heart, is difficult to describe.

167. All of the actions of Defendant were taken in light of a deliberate plan, intent, and scheme.

168. All of the misrepresentations and suppressions of material fact which were made intentionally, maliciously, recklessly, negligently, and/or innocently.

169. The Plaintiffs properly relied upon all such misrepresentations and suppressions of material facts and have been damaged thereby.

170. At all times Defendant Zwicker had an obligation to speak truthfully and to not lie to Plaintiffs and to not tell half truths to Plaintiffs.

171. Defendant Zwicker knew at all times the devastating effect that the fraud would have upon the Plaintiffs.

172. Plaintiffs claim all damages allowable under law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant Zwicker for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiffs**

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS CAUSE.**

**Attorney for Plaintiffs**

**Serve defendant via certified mail at the following address:**

Zwicker & Associates, P.C.
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, Alabama 36104